IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ROBERT RICHARD KING, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | No. 05-0545-CV-W-SOW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court are movant Robert Richard King's ("King" or "movant") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. # 1), the Government's response and movant's reply. For the reasons set forth below, movant's Motion is denied.

I. Background

On June 27, 2001, a grand jury sitting in the Western District of Missouri indicted Robert Richard King on charges of conspiracy in violation of 18 U.S.C. § 371 and with violating the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-2, and the Travel Act, 18 U.S.C. § 1952. The indictment charged that King engaged in a conspiracy with four other individuals to pay bribes to Costa Rican officials to obtain valuable land concessions in connection with efforts to develop a new port in that country. On July 10, 2001, King pleaded not guilty.

King sought dismissal of the indictment on various grounds. An evidentiary hearing was held before Magistrate Judge John Maughmer who issued two reports recommending that the district court deny all of King's motions to dismiss. On June 13, 2002 District Judge Dean Whipple entered two orders which adopted those recommendations.

On June 17, 2002, trial commenced before this Court. At the close of the Government's

case, King moved for judgment of acquittal on all counts pursuant to Fed. R. Crim. P. 29(a). This Court denied King's motion with respect to the conspiracy count and four of seven counts charging FCPA violations, but granted the motion as to the remaining three FCPA counts and the two Travel Act counts. The defendant offered exhibits but no witnesses in his case.

The relevant facts are as follows: In the 1990s, Stephen Kingsley, a British national, joined with others in an attempt to develop a new port, which was to include commercial, residential, and resort facilities, near Limon, Costa Rica. Through Owl Securities, Inc. ("OSI"), a Kansas City based company of which Kingsley was chief executive officer and president, Kingsley, Richard Halford (OSI chief financial officer), and Albert Reitz (OSI vice president), attempted to raise money from investors. King became one of OSI's largest investors, putting over $2 million into the company in the form of stock purchases and loans.

Halford and Reitz testified that OSI had long planned to pay a large bribe, initially calculated to be $1 million, to senior Costa Rican officials and political parties to obtain the concession for the land on which the new development was to be built. Halford testified that King was well aware of this prospective payment as early as 1999. Kingsley agreed to wear a wire in this case and cooperate with the Government. Specifically, Kingsley communicated with FBI Special Agent Robert Herndon regarding communications between himself and King. Many of the excerpts from the recordings were presented to the jury at trial. King himself told Kingsley in a recording in May 2000 that he had known of the $1 million payment for five years. Kingsley confessed wrongdoing to Agent Herndon. No recording of the confession was made.

King has asserted that his attorney was ineffective in failing to subpoena Ray Montierth, a witness who supposedly possessed exculpatory information. The record shows that King

purportedly met in person with Montierth and Montierth agreed to act as the director general of the Ethics and Compliance Committee of a company King planned to form.

Kingsley died in the fall of 2000 and therefore was not available to testify at trial. Agent Herndon testified as to many communications between himself and Kingsley, as well as to the recordings. The jury returned guilty verdicts on the conspiracy count and the four remaining FCPA counts.

Following the trial, King moved for a new trial or an arrest of judgment. On October 29, 2002, this Court denied that motion. On November 12, 2002, King was sentenced by this Court to thirty months' imprisonment on each count, to run concurrently, two years' supervised release, a fine of $60,000, and a mandatory special assessment of $500.00.

King filed a timely notice of appeal that same day. On December 15, 2003, the United States Court of Appeals for the Eighth Circuit issued an opinion rejecting King's claimed errors and affirming his convictions. See United States v. King, 351 F.3d 859 (8th Cir. 2003). King subsequently filed a petition for certiorari with the United States Supreme Court, which was denied on June 14, 2004. See King v. United States, 2004 U.S. LEXIS 4213 (June 14, 2004).

King filed a motion for relief under 28 U.S.C. § 2255 on September 5, 2005. In his § 2255 motion, King raises eight claims. First, King claims ineffective assistance of counsel and that his attorney's performance at trial was constitutionally deficient in four ways. Next, King raises a due process claim that the Government failed to disclose exculpatory evidence. Next, King raises due process claims. Finally, King raises a Confrontation Clause claim. All movant's arguments are without merit. The Court will discuss each claim of error in turn.

II. Discussion

A. Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel may be raised for the first time in a section 2255 motion, yet "post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." United States v. Ledezema-Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The movant must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 422 U.S. at 687-88. Where a movant fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. See Frey v. Schuetzle, 151 F.3d 893, 899 (8th Cir. 1998).

King raised four claims of ineffective assistance of counsel: (1) counsel failed to make an offer of proof regarding certain recordings; (2) counsel failed to subpoena or secure an affidavit from Ray Montierth; (3) counsel failed to request a lesser-included offense instruction; and (4) counsel presented a "guilt-based" defense.

1. Counsel's failure to make an offer of proof

King alleges that his counsel was ineffective for failing to make an offer of proof regarding certain recordings made during the course of the investigation. King contends that portions of those tapes were exculpatory and were his best defense. King's claim of ineffectiveness on this basis does not fall below an objective standard of reasonableness. The

4

record reflects that King's counsel offered those portions of the tapes at trial which contained information consistent with King's theory of defense, including portions of the recordings which showed that King was upset when Kingsley first mentioned bribes and kickbacks, that he repeatedly stated that he was unaware of past bribes, and that Kingsley specifically assured King that no bribes had been paid. Furthermore, King's counsel focused the jury's attention on the relatively limited use of incriminating language in the tapes. Accordingly, King's claim must fail.

In his motion, King apparently argues about the amount his attorney charged him for his representation. Section 2255 provides no basis for relief for this claim. Accordingly, it cannot serve as a valid basis for post-conviction relief.

2. Counsel's failure to subpoena or secure an affidavit from Ray Montierth

King next claims that his attorney was ineffective in failing to subpoena Ray Montierth. Montierth is purportedly a witness who possessed exculpatory information. King contends that Montierth should have been called as a witness or at the very least his counsel should have acquired an affidavit to present at trial. The Government acknowledges, and the Court agrees that King presumably would have offered this evidence to show lack of intent, or in other words, to show that he "was not into bribing people." Apparently King wanted to offer evidence that he met with Montierth and that Montierth was slated to act as the director of an Ethics and Compliance Committee for the company King planned to form.

Federal Rules of Evidence 404 and 405 prohibit the admission of character evidence in this form. An accused may offer evidence of a pertinent character trait to prove action in conformity with that trait. Fed. R. Evid. 404(a)(1). Under Rule 405(a) and (b), character may be

5

proved by "specific instances of conduct" only on cross-examination or where the character or trait of character is an essential element of a charge, claim, or defense. United States v. Swanson, 9 F.3d 1354, 1359 (8th Cir. 1993).

In this case, King wanted Montierth to testify to specific instances of conduct, namely that King met with Montierth and discussed with him the desire to form an ethics and compliance committee. King's hope was that this would lead the jury to believe that such a person would not have been involved in a scheme such as the Costa Rica Project. Yet, this specific instance of conduct would not be admissible under the Federal Rules because character if not an essential element of any of the offense charges (conspiracy and violations of the FCPA and Travel Act), and the evidence was not properly admissible to attempt to nullify the intent element of each charge. "Evidence of good conduct is not admissible to negate criminal intent." United States v. Camejo, 929 F.2d 610, 613 (11th Cir. 1991).

Finally, an affidavit from Montierth would have been inadmissible. It is hearsay, not subject to any recognized exceptions. See Fed. R. Evid. 802.

King's arguments fail because this evidence would not be admissible under the Federal Rules of Evidence. Counsel's representation as to this matter was not objectively unreasonable and nonetheless, King cannot show prejudice in that the result of the proceedings would not have been different.

3. Counsel's failure to request a lesser-included offense instruction

Next, King claims that his counsel was ineffective for failing to request a lesser-included offense instruction. A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element that is not required for

6

conviction of the lesser-included offense. Schmuck v. United States, 489 U.S. 705, 716 (1989).

King's argument fails. The FCPA contains no lesser-included offense. Movant's counsel cannot be faulted for having failed to request a lesser-included offense instruction when it was not possible that such a request would have been granted.

4. Counsel's presentation of a "guilt-based" defense

Finally, King asserts that his counsel was ineffective for presenting a guilt-based defense. Based on the record, the Court finds that King's counsel did not present a guilt-based defense. His counsel argued that the evidence failed to establish that King had violated the law. Furthermore, he cross-examined government witnesses. In addition, counsel offered evidence that King was "in shock" when he found out that Kingsley was saying that he was paying bribes in Costa Rica, and that King left an August 2000 meeting angry with Kingsley and undecided about whether to participate further in the transaction. Counsel also cross-examined cooperator Reitz and elicited evidence that King was often upset at statements Kingsley made about bribes and kickbacks. In cross-examining Agent Herndon, King's counsel also offered similar evidence regarding the content of the recordings, showing that King was upset when Kingsley first mentioned bribes and kickbacks, that King repeatedly stated that he was unaware of past bribes, and that Kingsley specifically assured King that no bribes had been paid.

Accordingly, King cannot show that counsel's performance in his defense fell below an objective standard of reasonableness and King's claim must fail. King has failed to demonstrate that his counsel was constitutionally ineffective in any respect.

B. Due Process Claim that the Government Failed to Disclose Exculpatory Evidence

Specifically, King alleges that it was "impossible" that Kingsley's confession was not

7

electronically recorded and "submits" that "Kingsley's confession contained exculpatory evidence favorable to King." The Court finds that this claim is procedurally barred as King failed to raise it on direct review.

The defendant's failure to raise an issue before the district court and the court of appeals on direct review amounts to a procedural default of that claim. See United States v. Frady, 456 U.S. 154, 168 (1982); Williams v. United States, 98 F.3d 1052, 1054 (8th Cir. 1996). Once a claim has been procedurally defaulted, a court may entertain that claim in a § 2255 proceeding only if the movant establishes both "cause excusing his procedural default and 'actual prejudice' resulting from the alleged error." Williams, 98 F.3d at 1054 (quoting Frady, 456 U.S. at 168). Cause can be shown if the prisoner demonstrate that the legal or factual arugment was "so novel" that it was unavailable previously. See Reed v. Ross, 468 U.S. 1, 16 (1984). A prisoner may also attempt to demonstrate that his counsel was constitutionally ineffective within the meaning of Strickland. See Murray v. Carrier, 477 U.S. 478, 492 (1986).

In this case, King never raised his due process claim that he had not received exculpatory evidence to the district court or the Eighth Circuit on direct review. He now does not present any evidence of cause or actual prejudice. King has not discovered any evidence previously suppressed by the Government. There is simply no recording of Kingsley's confession. Accordingly, King's due process claim is without merit.

C. Final Due Process Claims

Movant King claims that there was insufficient evidence to support his conviction and that his conviction was the product of unconscionable conduct on the part of the Government. These claims were previously raised and resolved against movant on direct review. When a

8

defendant litigates a claim on direct review and loses, he is procedurally barred from raising that claim in a § 2255 motion. Thompson v. United States, 7 F.3d 1377, 1379 (8th Cir. 1993). "Any matter which has been decided adversely to the petitioner upon direct appeal is not cognizable under 2255." Houser v. United States, 508 F.2d 509, 513-14 (8th Cir. 1974).

First, King argues that "there is no credible evidence that links him to the alleged conspiracy, or any other crime." However, the Eighth Circuit concluded: "[v]iewing the evidence in the light most favorable to the verdict, there was ample evidence in the record to support the jury's convictions. The tape recordings alone support the jury's verdict." United States v. King, 351 F.3d 859, 863 (8th Cir. 2003). Next, King raises the claim that his due process rights were violated by unconscionable Government conduct. Specifically, he alleges that Agent Herndon "manufactured the alleged 'bribery' of foreign officials to enhance his career." Again, King already had a hearing on the issue and the Eighth Circuit ruled against King on this issue: "[a]fter our thorough review of the evidence presented on the hearing on the motion to dismiss, we too follow the well-reasoned analysis of the magistrate judge. We find no evidence of conscience-shocking behavior on the part of the government." Id. at 867.

Accordingly, since these claims were raised on direct review and decided against movant, these claims are procedurally barred.

D. Confrontation Law Claim

Finally, King argues that the admission of hearsay evidence from unavailable co-conspirators violated his rights under the Confrontation Clause. Specifically, he argues that seven recordings of Kingsley's conversations with King, four recordings of Kingsley's discussions with co-conspirator Barquero, and Kingsley's statements to Agent Herndon,

9

recounted by Herndon at trial, were all testimonial statements and that without an opportunity to cross-examine his co-conspirators, his Confrontation Clause rights were violated. King argues that the recent Supreme Court ruling in Crawford v. Washington, 541 U.S. 36 (2004) supports his argument. Crawford held that "testimonial" hearsay is inadmissible against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Id. at 68. King notes that Kingsley was dead at the time of trial and that Barquero remains a fugitive.

King's case was on appeal to the Eighth Circuit in 2003. On direct appeal, the Eighth Circuit ruled that "[t]he district court did not abuse its discretion in admitting these statements." King, 351 F.3d at 865. Accordingly, the Eighth Circuit has already ruled against King on this claim.

Even though King recognizes that the Eighth Circuit has already ruled adversely on his Confrontation Clause claim, he argues that Crawford now changes the result. This argument is without merit. Crawford, decided one year later, does not apply retroactively to cases on collateral review. The Eighth Circuit in Evans v. Luebbes, 371 F.3d 438 (8th Cir. 2004), made two alternative holdings rejecting a Crawford claim on collateral attack. Id. at 44-45. First, Evans held that Crawford was not retroactive because "the Crawford Court did not suggest that this doctrine would apply retroactively and the doctrine itself does not appear to fall within either of the two narrow exceptions to Teague v. Lane's non-retroactivity doctrine. 371 F.3d at 444. Evans also noted "that the Court declined to give a full definition of what 'testimonial' statements are," and decided that "Crawford's holding applies 'to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at

10

445 (quoting Crawford, 541 U.S. at 68). Furthermore, the Eighth Circuit has held that co-conspirator statements are not testimonial. See United States v. Reyes, 362 F.3d 536, 540-41 (8th Cir. 2004) ("But no such right existed because Gonzalez's statements were nontestimonial, co-conspirator statement, which fall within a firmly rooted hearsay exception.").

In this case, King's Confrontation Clause claim has already been decided against him on direct review and the Supreme Court's holding in Crawford is inapplicable as that decision does not apply retroactively to King's case on collateral review. Even if Crawford did apply, co-conspirator statements have been found by the Eighth Circuit to be nontestimonial. The statements of both Kingsley and Barquero were admissible co-conspirator statements under Fed. R. Civ. P. 301(d)(2)(E) as exceptions to the hearsay rule. Accordingly, King's Confrontation Clause claim is procedurally barred.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that movant's Motion to Vacate, Set Aside, or Correct Sentence (Doc. #1) is denied.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: March 20, 2006

11